THE PEOPLE *ex rel.* GORDON JOHNSON, Director of the Department of Children and Family Services, Plaintiff-Appellee, v. FRANKLIN KULLE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—88—3731

Opinion filed May 25, 1990.

Whitted & Spain, P.C., of Chicago (Brooke R. Whitted and Nancy L. Grauer, of counsel), for appellants.

Cecil A. Partee, State's Attorney, of Chicago (W. Dennis Richardson, Assistant State's Attorney, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal follows entry of summary judgment in favor of the Illinois Department of Children and Family Services in an action to enjoin Franklin and Annette Kulle and the Countryside Montessori

School from operating an unlicensed day care center with respect to its programs for children under three years of age in violation of the Child Care Act of 1969 (Act) (Ill. Rev. Stat. 1987, ch. 23, pars. 2211 through 2230).

We affirm with modification of the circuit court's order.

Franklin and Annette Kulle are the founders and administrators of the Countryside Montessori School (Countryside), located in Northbrook, Illinois. Countryside offers programs for children aged 18 months to 12 years. The school is accredited by the Association Montessori Internationale, is a member of the Illinois Montessori Society, and is registered with the Illinois State Board of Education. Countryside operates on a calendar with programs beginning in September and ending in June of the following year.

Informational literature contained in the record indicates the following programs are offered at Countryside: "Parent-Infant," for children who are between 9 and 18 months old and their parents; "Toddler," for children under 2½ years old; "Extended Day," for children "ready for a full day in the Montessori classroom"; "Elementary," for children 6 to 12 years old; and "Stay and Play," offering "after school care" from 3 p.m. to 5 p.m. for children aged four years and older who are enrolled in the "Extended Day" or "Elementary" programs. Countryside offers a "Breakfast Club" program from 8 a.m. to 8:30 a.m. for "children whose parents need an early drop-off time in the morning." The record also indicates Countryside offers a three-year "Primary" program, which defendants' brief indicates is open to children from 2½ to 6 years of age. Countryside also conducts a "Summer Camp" program which includes a "Toddler" program for children 18 to 30 months old, a "Primary" program for children 2½ to 6 years old, and a "Computer Program" for children 5 to 10 years old.

On June 27, 1988, the Cook County State's Attorney, at the request of the Director of the Illinois Department of Children and Family Services (DCFS), filed a complaint for an injunction to prohibit Countryside from operating as an unlicensed day care center in violation of the Act. (See Ill. Rev. Stat. 1987, ch. 23, par. 2221.1.) Specifically, the complaint alleged the operation of Countryside constituted operation of an unlicensed day care center because Countryside "provided care for more than three unrelated children in a facility other than a family home for less than twenty-four hours per day" in violation of section 3 of the Act. Section 3 provides, in pertinent part:

"(a) No person *** may operate or conduct any facility for child care, as defined in this Act, without a license or permit

issued by the [DCFS] or without being approved by the [DCFS] as meeting the standards established for such licensing[.]" Ill. Rev. Stat. 1987, ch. 23, par. 2213.

Defendants filed an affirmative defense, asserting Countryside was a school, not a day care center, and, as such, was exempt from DCFS regulation.

On August 24, 1988, the State moved for summary judgment on the complaint.

Defendants, in turn, filed a cross-motion for summary judgment supported by a memorandum to which defendants attached, as exhibits, numerous materials describing Countryside's programs and the affidavits of Franklin and Annette Kulle. Franklin Kulle's affidavit stated Countryside was recognized as a nonpublic school by the Cook County superintendent of schools. Further, no children under three years old were enrolled in the "Breakfast Club," "Stay and Play," or "Extended Day" programs. Annette Kulle's affidavit stated that, in offering the "Toddler" and "Primary" programs to children under age three, Countryside's purpose was to educate and instruct rather than to provide custodial care and supervision.

In a written memorandum and order, the trial judge denied defendants' motion and granted summary judgment in favor of the State. The order recited that Countryside operated as an unlicensed day care center with respect to its programs for children under three years old and enjoined defendants from receiving children under three years old into Countryside's programs without a day care license.

This appeal followed.

OPINION

On appeal, it is not disputed that programs administered at Countryside for children who are at least three years old are exempt from the Act. Rather, we are only presented with the question concerning whether Countryside may conduct its programs designed for children under three years old without a day care license.

It is defendants' position that because Countryside's programs are educational in nature, teaching what may be generally described as comprehensive academic and social skills, the programs are exempt from coverage of the Act regardless of the age of the children enrolled. Defendants rely primarily on the observation that the Act does not define the term "day care." Therefore, defendants reason, the term "day care" must be given its commonly understood meaning as pertaining to provision of custodial, not necessarily educational, care for children. However, defendants contend, the Act is limited, with

certain exclusions, to regulating only day care programs of custodial nature, not programs such as Countryside's.

We do not agree. We likewise observe the Act does not define the term "day care." We further note the absence of discussion of that term in legislative debates on the Act. However, a careful reading of the Act's provisions reveals that, while the term "day care" is not expressly defined, the term is given meaning through definition in the Act of the entities deemed to be engaged in the practice of providing day care and of the types of programs excluded from consideration as day care.

■■ ■ Section 3(a) of the Act mandates licensure for any person, group of persons, or corporation operating or conducting "any facility for child care." (Ill. Rev. Stat. 1987, ch. 23, par. 2213(a).) We note that a child is defined, pertinent here, as "any person under 18 years of age." (Ill. Rev. Stat. 1987, ch. 23, par. 2212.01.) Such a "facility for child care" is defined in section 2.05 to mean:

"[A]ny person, group of persons, agency, association or organization, whether established for gain or otherwise, who or which receives or arranges for care or placement of one or more children, unrelated to the operator of the facility, apart from the parents, with or without the transfer of the right of custody in any facility as defined in this Act, established and maintained for the care of children." Ill. Rev. Stat. 1987, ch. 23, par. 2212.05.

Under the pertinent operative language of section 2.05, defendants' activities constitute operation of a facility for child care and therefore require licensure if Countryside is a facility as defined in the Act and the enrollment of children in Countryside's programs constitutes receipt of children there apart from their parents. We conclude Countryside constitutes such a facility for child care because its programs come within the scope of programs deemed as being conducted by a "day care center" as defined in the Act.

The first sentence of section 2.09 of the Act defines a "day care center" broadly as

"any child care facility which regularly provides day care for less than 24 hours per day for (1) more than 8 children in a family home, or (2) more than 3 children in a facility other than a family home." Ill. Rev. Stat. 1987, ch. 23, par. 2212.09.

The controversy in the instant case centers on the determination of what the General Assembly contemplated as constituting day care because that term is not given express definition in the Act. That controversy is resolved through application of a basic rule of statutory in-

terpretation that the inclusion of one thing in a statute necessarily implies the exclusion of others. (See *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 131 N.E.2d 487.) We are guided by that rule because, in the remaining language of section 2.09, the General Assembly provided specific exclusions as to activities which are not to be deemed activities of a day care center.

Specifically, in the remainder of section 2.09, the General Assembly provided that the term "day care" does not include:

"(a) programs operated by public or private elementary school systems or secondary level school units or institutions of higher learning which serve children who shall have attained the age of 3 years; (b) programs or that portion of the program which serves children who shall have attained the age of 3 years and which are recognized by the State Board of Education; (c) *educational program or programs serving children who shall have attained the age of 3 years and which are operated by a school which is registered with the State Board of Education and which is recognized or accredited by a recognized national or multistate educational organization or association which regularly recognizes or accredits schools*; (d) programs which exclusively serve or that portion of the program which serves handicapped children who shall have attained the age of 3 years but are less than 21 years of age and which are registered and approved as meeting standards of the State Board of Education and applicable fire marshal standards; (e) facilities operated in connection with a shopping center or service, religious services, or other similar facility, where transient children are cared for temporarily while parents or custodians of the children are occupied on the premises and readily available; (f) any type of day care center that is conducted on federal government premises; (g) special activities programs, including athletics, crafts instruction and similar activities conducted on an organized and periodic basis by civic, charitable and governmental organizations; (h) part day child care facilities, as defined in [s]ection 2.10 of this Act; or (i) programs or that portion of the program which (1) serves children who shall have attained the age of 3 years, (2) is operated by churches or religious institutions and described in [s]ection 501(c)(3) of the federal Internal Revenue Code, (3) receives no governmental aid, (4) is operated as a component of a religious, nonprofit elementary school, (5) operates primarily to provide religious education, and (6) meets appropriate State or local health and fire safety standards." (Em-

phasis added.) Ill. Rev. Stat. 1987, ch. 23, par. 2212.09.

■ Relevant here is the exclusion contained in subsection (c), above. It is that express exclusion which necessarily implies, under the design of section 2.09, that programs for children under three years old, otherwise falling within the scope of the description of programs under subsection (c), *must* constitute programs giving rise to a determination that an entity providing such programs constitutes a day care center. In other words, the omission of an exclusion in section 2.09 for educational programs for children less than three years old indicates a legislative intent to include such programs within the ambit of day care center licensing requirements.

■ Essentially, reading sections 2.05 and 2.09 together, if one receives or places children into any facility apart from parents on a regular basis for less than 24 hours, without transfer of custody rights, then one is engaged in the practice of day care, as a day care center is defined by the Act, and must be appropriately licensed where no exclusion provided in section 2.09 is applicable. Therefore, we conclude Countryside must be licensed as a day care center with respect to its educational programs in which children are enrolled who are under three years old and who attend those programs apart from their parents. However, we note the circuit court did not include, in its order requiring licensure for programs in which children less than three years old participate, the element concerning attendance of those children apart from their parents. To that extent, we modify the order of the circuit court to include that element.

■ As an alternative argument, defendants contend application of the Act violates liberty and property rights under the fifth amendment because the licensing requirements undermine the Montessori teaching philosophy. Defendants also contend application of the Act violates defendants' first amendment rights of free speech because, as a day care center, defendants would be required to post their license in a prominent location and would be required to supply parents of students with a pamphlet concerning day care centers. See 89 Ill. Adm. Code §§407.6, 407.8(d) (1985).

We find no merit in either of the above contentions. Even accepting the position that operating, or sending a child to, a Montessori school involved fundamental rights, we believe the State has an overriding interest in regulating the field to protect children less than three years old. (See *Ginsberg v. New York* (1968), 390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274.) Further, because Countryside constitutes a day care center as defined in the Act for certain of its programs as outlined above, Countryside is obligated to comply with reg-

ulations respecting day care centers to that extent. We fail to see how compliance with applicable regulations concerning posting of license or supplying a pamphlet in conjunction with the operation of programs which define Countryside as a day care center impinges on any first amendment rights.

Affirmed as modified.

COCCIA, P.J., and MURRAY, J., concur.